IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | |
|---|---|
| **ROBERT J. BAKER,** ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| **v.** ) | **No. 2:08-CV-2619** |
| ) | |
| **BAPTIST MEMORIAL HOSPITAL,** ) | |
| ) | |
|     **Defendant.** ) | |

---

**MEMORANDUM OPINION**

---

      This is a breach of contract action brought pursuant to the Court's diversity jurisdiction under 28 U.S.C. § 1332. In this case Plaintiff Robert J. Baker, Ph. D., a medical physicist, claims that he entered into a thirteen-week employment contract with Defendant Baptist Memorial Hospital. Plaintiff further alleges that Defendant breached that contract by terminating his employment before completion of the thirteen-week period. The Court tried this civil action without a jury on November 16, 2012. Following the trial, the parties filed proposed findings of facts and conclusions of law. Federal Rule of Civil Procedure 52 requires that, "[i]n an action tried on the facts without a jury . . ., the court must find the facts specially and state its conclusions of law separately."[1] In accordance with the Rule, the Court finds and states the following:

**FINDINGS OF FACT**

      Plaintiff Robert J. Baker, Ph. D., ("Plaintiff") is a board-certified medical physicist residing in Oceanside, California. Plaintiff's career experience in this field totals approximately

---

[1] Fed. R. Civ. P. 52(a)(1).

1

43 years.  At this stage of his career, Plaintiff regularly obtains temporary employment at various health care institutions throughout the United States.  To obtain leads for these positions, Plaintiff utilizes the services of third-party recruiters.  Defendant Baptist Memorial Hospital ("Defendant") is a non-profit hospital, organized and operating in Memphis, Tennessee.  Defendant provides radiation therapy at its Radiation Oncology Department.  Defendant's Radiation Oncology Department requires the services of medical physicists as well as other medical professionals.

In early 2006, Defendant's Radiation Oncology Department was in need of a medical physicist and dosimetrist, and Defendant was seeking a permanent replacement for these positions.  At this time, Karen Marks ("Marks") was Defendant's Director of Radiation Oncology.  Until Defendant could hire permanent replacements, Nicholas Blake ("Blake"), a recruiter for Medical Recruiters Online ("MRO"), searched for possible candidates to temporarily fill these positions for Defendant.  MRO is a third-party recruiting company that specializes in radiation oncology.

In February 2006, MRO and Blake were in contact with Plaintiff about Defendant's medical physicist position and inquired whether he would be interested in employment with Defendant as a temporary medical provider.  Plaintiff understood that the position was a temporary, or *locum tenens*, position.  Plaintiff also understood that Blake was a third-party recruiter and not an employee of Defendant.  On February 24, 2006, after some email discussions between Blake and Plaintiff, Blake forwarded Plaintiff a document styled "Independent Contractor Agreement."  Schedule A attached to that agreement states that the employment agreement "shall commence on March 6, 2006, and shall continue in full force and effect through June 2, 2006 or earlier upon completion of the Contractor's duties under this

Agreement." This proposed agreement further provided for an hourly rate of $170 per hour for up to 40 hours per week. On February 27, 2006, Blake provided Marks with this proposed agreement. Subsequently, Marks approved the $170.00 per hour rate, but Blake and Marks never discussed a length of employment or date range for Plaintiff's employment. In addition, although both parties agreed the rate was high, Plaintiff was responsible for his own expenses for lodging, meals, and rental vehicle.

Even though MRO proposed this agreement to be entered into between Plaintiff and Marks, neither party executed the agreement. Nonetheless, Plaintiff believed that it set out the terms of his agreement with Defendant. For its part, Defendant did not intend to contract directly with Plaintiff. Instead, Defendant intended to enter into a document styled "Services Agreement" with MRO. Defendant prepared this document through Janelle Burns, Defendant's in-house counsel. Defendant proposed to contract only with MRO to obtain the services of a temporary medical physicist. Through the "Services Agreement," Defendant was to retain the ability to terminate unsuitable personnel placed by MRO. In this event, MRO was to find a suitable replacement.

Although originally scheduled to begin work on March 6, 2006, Plaintiff traveled to Memphis on March 7, 2006. Plaintiff delayed traveling to Memphis because he had not yet received a written contract. Nevertheless, prior to traveling to Memphis, Plaintiff was of the understanding that he had a thirteen-week contract, which guaranteed him forty hours of work per week at a rate of $170.00 per hour.[2] Plaintiff reported to Defendant's Radiation Oncology Department to begin work the next morning on March 8, 2006. Once Plaintiff arrived, he met

---

[2] Although Plaintiff had not received a written contract before he traveled to Memphis, Plaintiff testified that he was offered the employment position from Blake. Plaintiff further testified that he ultimately accepted the position through Blake. Plaintiff added, however, that he understood Blake to be a third-party recruiter and not an employee of Defendant.

3

with Marks to begin Defendant's Orientation for Non-Employees. During orientation, Plaintiff asked to see a written contract, and Marks presented the "Services Agreement" to him. This agreement, however, was between Defendant and MRO. Although Plaintiff was not a party to this agreement, he became concerned about its indemnity provision, stating to Marks that it was a "deal breaker." After discovering this provision, Plaintiff spoke with Blake by telephone, and Blake informed him that he was not a party to the "Services Agreement." Plaintiff then completed the orientation process with Marks. Plaintiff and Marks never reviewed or discussed the Independent Contractor Agreement prepared by Blake.

After completing the orientation process with Plaintiff, Marks notified Blake by email correspondence that she had some concerns about Plaintiff. Marks did not see Plaintiff as a good fit in the Radiation Oncology Department. Consequently, at the end of the day on Friday, March 10, 2006, Marks informed Plaintiff that Baptist no longer needed his services. Before Plaintiff's employment was terminated, Plaintiff worked three days for Defendant, totaling 27 hours. The parties agree that Plaintiff was to receive $170 per hour and that Plaintiff was not entitled to separate expenses. Plaintiff filed the suit on August 26, 2008.

## CONCLUSIONS OF LAW

**A. Breach of Contract Claim**

In Tennessee, the essential elements of a breach of contract claim "include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract."[3] To have a valid, enforceable contract, the following must be met: mutual assent to the terms, sufficient consideration, free from fraud

---

[3] *Life Care Ctrs. of Am., Inc. v. Charles Town Assocs., Ltd.*, 79 F.3d 496, 514 (6th Cir. 1996); *C & W Asset Acquisition, LLC v. Oggs,* 230 S.W.3d 671, 676–77 (Tenn. Ct. App. 2007) (quoting *ARC LifeMed, Inc. v. AMC–Tenn., Inc.,* 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)).

or undue influence, not against public policy, and sufficiently definite to be enforced.[4] Therefore, as Tennessee law has long recognized, a contract must result from a meeting of the minds of the parties in mutual assent to the terms to be enforceable.[5] The agreement must state terms definite enough to provide a basis for determining a breach and for giving an appropriate remedy.[6] In the context of an employment agreement, this means that a contract usually contains both a rate and a term.[7] To assess mutuality of assent, courts apply an objective standard based upon the parties' manifestations.[8] The party seeking to prove the existence of a contract has the burden of showing mutual assent.[9]

Based upon the trial testimony, the Court finds that Plaintiff has failed to establish a meeting of the minds between the parties, and so the Court finds for Defendant on Plaintiff's breach of contract claim. In this case, the material facts are largely undisputed. But those undisputed facts fail to evince a meeting of the minds between the parties. Plaintiff has not carried his burden to show mutual assent to the term of employment, an essential term of the agreement. The parties' differing versions of the employment contract underscores the lack of

---

[4] *Staubach Retail Servs.-Se., LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 524 (Tenn. 2005).

[5] *Allstate Ins. Co. v. Tarrant*, 363 S.W.3d 508, 528 (Tenn. 2012); *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001).

[6] *See Doe*, 46 S.W.3d at 196 (citing *Higgins v. Oil, Chem., & Atomic Workers Int'l Union, Local # 3-677*, 811 S.W.2d 875, 881 (Tenn. 1991)); *see also Restatement (Second) of Contracts* § 33(2) (1981) ("The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.").

[7] *See Sudberry v. Royal & Sun Alliance*, 344 S.W.3d 904, 912 (Tenn. Ct. App. 2008).

[8] *Staubach*, 160 S.W.3d at 524.

[9] *Life Care Ctrs. of Am.*, 79 F.3d at 513; *Price v. Mercury Supply Co.*, 682 S.W.2d 924, 933 (Tenn. Ct. App. 1984) (citing *Am. Lead Pencil Co. v. Nashville, Chattanooga & St. Louis Ry. Co.*, 134 S.W. 613, 615 (1910)).

mutual assent. Plaintiff believed the document styled "Independent Contractor Agreement" constituted his agreement with Defendant. Schedule A attached to this agreement specifically provides that the employment agreement "shall commence on March 6, 2006, and shall continue in full force and effect through June 2, 2006 or earlier upon completion of the Contractor's duties under this Agreement." While this document contains signature lines for execution by Plaintiff and Marks, neither Plaintiff nor Marks executed this agreement. On the other hand, the evidence shows Defendant did not intend to contract directly with Plaintiff. Defendant intended only to enter into a written agreement styled "Services Agreement" with MRO. Under that agreement, Defendant was to retain the ability to terminate unsuitable personnel placed by MRO, and should that occur, MRO was to find a suitable replacement.

      Overall, given that there were two different contract documents executed by neither party, Plaintiff has failed to show that there was a meeting of the minds between himself and Defendant regarding a definite term of employment. On the contrary, the Court finds that the parties fundamentally disagreed about the thirteen-week contract term contained in the "Independent Contractor Agreement," which was apparently introduced by Blake and MRO. In the absence of a meeting of the minds, the Court holds that the parties never formed a contract. Therefore, Defendant is entitled to judgment on Plaintiff's breach of contract claim. Although not raised by either party, the dispute as to the origination of this term fairly raises the issue of agency.

**B. Scope of Agency**

      Even though Plaintiff has failed to prove that Defendant agreed to a term of 13 weeks, the Court does find that Blake did state to Plaintiff that "everything is a go" prior to Plaintiff traveling to Memphis. The issue then is whether Blake or MRO bound Defendant by making the

offer. The concept of agency "includes every relation in which one person acts for or represents another."[10] Whether an agency relationship exists is "a question of fact to be determined under the circumstances of each case, determined by examining either an agreement between the parties or based on the parties' action."[11] Under Tennessee law, "[w]hen an agency relationship exists, the principal may be bound by the acts of the agent performed on the principal's behalf and within the actual or apparent scope of the agency."[12] The focus of this inquiry is "placed upon the actions and consent of the principal, rather than upon the agent's actions or the willingness of the agent to perform those actions."[13] Actual authority—express or implied—and apparent authority comprise an agent's possible authority.

**1. Actual Agency**

An agent's actual authority "consists of the powers which a principal directly confers upon an agent or causes or permits him to believe himself to possess."[14] Tennessee courts recognize that "[a]ctual authority flows from the manifestations of the principal to the agent."[15] Therefore, actual authority can be either express or implied, and it results from manifestations

---

[10] *White v. Revco Disc. Drug Ctrs., Inc.*, 33 S.W.3d 713, 723 (Tenn. 2000) (quoting *Kerney v. Aetna Cas. & Sur. Co.*, 648 S.W.2d 247, 253 (Tenn. Ct. App. 1982)).

[11] *Boren* ex rel. *Boren v. Weeks*, 251 S.W.3d 426, 432 (Tenn. 2008) (citing *White*, 33 S.W.3d at 723).

[12] *Id.* (citing *White*, 33 S.W.3d at 723).

[13] *White*, 33 S.W.3d at 723 (quoting *V.L. Nicholson Co. v. Transcon Inv. & Fin. Ltd.*, 595 S.W.2d 474, 483 (Tenn. 1980)).

[14] *Milliken Grp., Inc. v. Hayes Nissan, Inc.*, 86 S.W.3d 564, 567 (Tenn. Ct. App. 2001) (citing 2A C.J.S. *Agency* § 147 (1972)).

[15] *Id.*

from the principal to the agent.[16]  Consequently, if an agent acts with actual authority, then he may bind a principal in contract.[17]

Because neither party called Blake to testify at the bench trial, the record does not contain his testimony.  But based upon the other trial testimony, the Court finds that Blake did not have actual authority to bind Defendant to the term provision.  In an email correspondence, Blake communicated to Plaintiff that Defendant desired his services for a thirteen-week period.  Plaintiff stated that he subsequently accepted this offer.  On the other hand, Marks informed Blake that Defendant would have to use its own temporary staffing services agreement.  Apparently, neither Blake nor Marks communicated this information to Plaintiff.  While Defendant ultimately approved the $170.00 per hour rate, Marks further informed Blake that Defendant needed a temporary replacement only until a permanent could fill the position, and Marks and Blake never discussed the length of time Defendant would need Plaintiff's services.  Because Marks clearly informed Blake that Defendant would have to use its own staffing agreement and that Defendant needed a temporary replacement only until the position could be permanently filled, Blake did not possess actual authority to bind Defendant in contract.  Blake could not reasonably interpret Baptist's manifestations as giving him the authority to enter into a term agreement on behalf of Defendant.

## 2. Apparent Agency

Furthermore, the Court finds that Blake did not possess apparent authority to bind Defendant.  In addition to actual authority, a principal may be bound by acts that are within an

---

[16] *Id.*

[17] *Id.*
.

agent's apparent scope of authority.[18]  The elements of apparent agency are the following: (1) the principal actually or negligently acquiesced in another party's authority; (2) the third person had knowledge of the facts and a good faith belief that the apparent agent possessed such authority; and (3) the third person relied on this apparent authority to his or her detriment.[19] Apparent authority is established through the acts of the principal or through the perception of a third party, rather that those of the agent.[20]  The Tennessee Supreme Court has recognized:

> The apparent power of an agent is to be determined by the acts of the principal and not by the acts of the agent; a principal is responsible for the acts of an agent within his apparent authority only where the principal himself by his acts or conduct has clothed the agent with the appearance of authority, and not where the agent's own conduct has created the apparent authority.  The liability of the principal is determined in any particular case, however, not merely by what was the apparent authority of the agent, but by what authority the third person, exercising reasonable care and prudence, was justified in believing that the principal had by his acts under the circumstances conferred upon his agent.[21]

Therefore, "apparent authority rests on principles of estoppel."[22]  If a principal clothes an agent with apparent authority to act on his behalf, then the principal is estopped from denying liability for the acts of the agent.[23]

Based upon the trial testimony, the Court also finds that Defendant did not clothe Blake with apparent authority to bind Defendant to the term provision.  Plaintiff did not perceive Blake

---

[18] *Boren,* 251 S.W.3d at 432.

[19] *Id.* at 432–33 (citation omitted).

[20] *Id.* at 433 (citation omitted).

[21] *Id.* (quoting *S. Ry. Co. v. Pickle*, 197 S.W. 675, 677 (Tenn. 1917)).

[22] *Dexter Ridge Shopping Ctr., LLC v. Little*, 358 S.W.3d 597, 609 (Tenn. Ct. App. 2010).

[23] *Id.*

to have the authority to hire him on behalf of Baptist.  Plaintiff testified that he did not believe Blake represented Defendant.  Consequently, Plaintiff understood Blake to be independent of, and not an employee or agent of, Defendant.  Based upon this testimony, Plaintiff could not reasonably perceive Blake to be Defendant's agent, regardless of Blake's representations to Plaintiff.  Therefore, Defendant did not clothe Blake with the outward appearance of authority.

Because Plaintiff and Defendant did not have a definite agreement with respect to Plaintiff's employment term, Plaintiff's employment status remained at-will.  Under Tennessee law, in order to rebut the presumption of at-will employment, Plaintiff must prove the employment relationship was contractual or was for a definite period.[24]  Without such proof, either the employer or the employee may "terminate the employment relationship at any time, for good cause, bad cause, or no cause at all, without being guilty of a legal wrong."[25]  Based upon the lack of a meeting of the minds between Plaintiff and Defendant for a definite employment term, Plaintiff failed to establish that Defendant agreed to employ him for a definite period.  Therefore, Plaintiff's employment with Defendant remained at-will.

## C.  Unjust Enrichment

Although the Court finds that parties had no contract, "the court may impose a contractual obligation when the defendant will be unjustly enriched absent a quasi-contractual obligation."[26]  The Tennessee Supreme Court has held:

---

[24] *Sudberry*, 344 S.W.3d at 912.

[25] *Id.* (citing *Harney v. Meadowbrook Nursing Ctr.*, 784 S.W.2d 921, 922 (Tenn. 1990); *Watson v. Cleveland Chair Co.*, 789 S.W.2d 538 (Tenn. 1989)).

[26] *Doe*, 46 S.W.3d at 197 (citing *Whitehaven Cmty. Baptist Church v. Holloway*, 973 S.W.2d 592, 596 (Tenn. 1998)).

> A quantum meruit action is an equitable substitute for a contract claim pursuant to which a party may recover the reasonable value of goods and services provided to another if the following circumstances are shown:
>
> (1) There is no existing, enforceable contract between the parties covering the same subject matter;
>
> (2) The party seeking recovery proves that it provided valuable goods or services;
>
> (3) The party to be charged received the goods or services;
>
> (4) The circumstances indicate that the parties to the transaction should have reasonably understood that the person providing the goods or services expected to be compensated; and
>
> (5) The circumstances demonstrate that it would be unjust for a party to retain the goods or services without payment.[27]

It is undisputed in this case that Plaintiff is entitled to compensation for his hours worked on March 8, 2006 through March 10, 2006. In determining a calculation of reasonable value of services rendered, no exact formula exists.[28] In this case, an examination of the parties' agreed rate and Plaintiff's subsequent actions show the parties' intent. Plaintiff worked from 8:00 a.m. to 5:00 p.m. each of the three days of his employment with Defendant. Therefore, the Court finds Plaintiff worked for Defendant for a total of 27 hours, exclusive of lunch breaks. The parties agree that Plaintiff was to be paid $170 per hour. While the parties submit differing estimations about the amount of weekly expenses Plaintiff would have incurred,[29] the parties agree that Plaintiff was not entitled to expenses. Because the parties agreed to the hourly rate, Plaintiff is entitled to compensation totaling $4,590 for the 27 hours of medical services rendered to Defendant.

---

[27] *Id.* at 197–98 (quoting *Swafford v. Harris*, 967 S.W.2d 319, 324 (Tenn. 1998)).

[28] *See Castelli v. Lien*, 910 S.W.2d 420, 430 (Tenn. Ct. App. 1995).

[29] Plaintiff asserts he would have incurred weekly expenses of $500, and Defendant contends he would have incurred weekly expenses of $1,027.13.

## **CONCLUSION**

Having failed to establish a meeting of the minds between himself and Defendant, Plaintiff has failed to establish his case for breach of an employment agreement. For this reason, the Court finds in favor of Defendant. Plaintiff is entitled, however, to compensation for services rendered in the amount of $4,590.

**IT IS SO ORDERED.**

                                          **s/ S. Thomas Anderson**
                                          S. THOMAS ANDERSON
                                          UNITED STATES DISTRICT JUDGE

                                          Date: April 4, 2013.